## M. H. Boals Planing Mill Company, Appellant, v. Cleveland, Cincinnati, Chicago & St. Louis Railway Company, Appellee.

1. INSTRUCTIONS, § 81*—*when singling out facts are misleading.* Instructions singling out facts, and each advising the jury that if the particular fact does not exist they would not be warranted in finding the defendant guilty, are misleading.

2. EVIDENCE, § 94*—*when question put to witness is immaterial and improper as calculated to prejudice the jury.* In the trial of an action against a railroad company for loss of property by fire due to sparks from a passing engine, it is not proper for counsel for plaintiff to inquire if the suit is not being carried on by an insurance company, since such question is immaterial and is calculated to prejudice the jury.

Boggs, J., dissenting.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

M. H. Boals P. M. Co. v. C., C., C. & St. L. Ry. Co., 211 Ill. App. 125.

Appeal from the Circuit Court of Madison county; the Hon. J. F. GILLHAM, Judge, presiding. Heard in this court at the October term, 1917. Reversed and remanded. Opinion filed April 5, 1918. Rehearing denied June 22, 1918.

J. V. E. MARSH, for appellant; KELLY & HEWITT, of counsel.

D. E. KEEFE and S. W. BAXTER, for appellee; L. J. HACKNEY and FRANK L. LITTLETON, of counsel.

MR. JUSTICE McBRIDE delivered the opinion of the court.

It appears from the record in this case that the appellant is the owner of a lumber yard and planing mill situated in the City of Alton, Illinois, and located south of Second street and east of Oak street and north of appellee's railroad. The south side of the planing mill was about 124 feet north of appellee's railroad. The planing mill was a three-story brick building and located on the northerly end of the lots, fronting on Second street. On the south side of the building there were, on the first floor, two large double doors, the sills or lower part of which were elevated some distance above the level of the ground, and immediately outside of these doors was a pile of waste lumber consisting of sawdust, scraps and small pieces of wood, which had been thrown out of doors from the mill. There were several sheds and lumber piles connected with this lumberyard and used in the transaction of the business.

It further appears from the evidence that on the 16th day of February, 1915, at the hour of about 4:30 o'clock in the afternoon, the planing mill with its contents were mostly destroyed by fire which resulted in a loss to the plaintiff, as it claims, of $30,000. At the time of the fire the only persons upon the premises were W. J. Boals, the secretary, Edwin Lutz, the fore-

man, and a teamster who was engaged in the hauling of lumber from the yard. At about the time the train hereinafter referred to passed by the lumberyard, Boals was engaged in checking up a load of lumber to be delivered by the teamster, and immediately thereafter he went to the office, which was a two-story brick building adjacent to but not connected with the main building, and was near the northeast corner of the mill. The machinery was operated by electricity and the current was cut off from the outside. On the day in question the mill was idle and there was no fire upon the premises, except in the office and the office was not burned. It further appears that about fifteen minutes before the fire was discovered a passenger train passed along appellee's railroad, and, as testified to by appellant's witnesses, was emitting considerable quantities of live cinders and sparks. Some of the witnesses testified that these sparks and cinders fell upon the building in considerable quantities, and also fell upon the horses and as claimed burned them, and also upon two men who claim to have been slightly burned, and that the horses and men were at a greater distance from the engine than the pile of kindling located at the south side, in which appellee claims that the fire originated, and near the west end of the planing mill. The day was clear, the wind blowing a strong gale from the south or southwest, and by reason of the character of the material in the building the plant burned rapidly and was soon consumed. It further appears from the evidence of the appellee that the men connected with the operation of the train did not observe that any cinders or sparks were being emitted from the engine, and while they say they did not observe it they claim to have no personal recollection of any sparks being emitted or not from the engine on that particular trip. It also appears from the testimony of appellee that the engine was equipped with a spark arrester of the best and

most approved kind to prevent the escape of fire and that it was in good repair and that the engine was properly and skilfully handled by a competent engineer and fireman.    Upon cross-examination of witnesses for appellee who testified to the character of the spark arrester, they say that if the spark arrester permitted sparks and cinders to be emitted from the engine, as testified to by witnesses for appellant, that said spark arrester must have been out of repair and that it would be impossible for such sparks to escape therefrom.    At the conclusion of the trial the jury returned a verdict in favor of the defendant and this appeal is prosecuted by the plaintiff.

The declaration in this case, after describing the mill, location of the lumberyard and other preliminaries, charges that while a certain locomotive engine of the defendant and under its control was then and there passing along the said railroad, along the plaintiff's said close, divers sparks and brands of fire then and there escaped and were thrown from the said locomotive engine by and through the mere carelessness and negligence of the defendant, and set fire to certain cuttings of lumber then in said close and located near the south door of the said brick building or planing mill and thereby the fire spread and was communicated to the said building and the contents thereof, whereby the same were destroyed.

It appears from the evidence, when considered as a whole, that it is somewhat conflicting.

It is contended by appellant that because of improper instructions having been given on behalf of the appellee that the jury were misled as to what appellant would be required to prove in showing that the appellee's engine set fire to the building.    The evidence as to the origin of the fire was circumstantial, no one appears to have seen how the fire originated. It is contended by counsel for appellant that the circumstances indicate that the sparks of fire emitted

from appellee's engine alighted upon this pile of kindling, sawdust and cuttings of lumber and set fire thereto, and that by reason of the blowing of the wind from a southerly direction the fire was driven under the doors, near the southwest corner of the mill building, and communicated to and destroyed the contents of the building.

The principal contention of appellant is that the court erred in giving appellee's first, fifth and seventh instructions. The first instruction is as follows: "The court instructs the jury that the fact that defendant's locomotive was operated on defendant's track which was close to plaintiff's premises, and that a short time thereafter a certain building was discovered to be on fire, would not warrant the jury in finding the defendant guilty; the plaintiff has the burden of establishing before the jury that the fire which caused the damage was set out by defendant's locomotive, and unless the jury believe this from a preponderance of the evidence you should by your verdict find the defendant not guilty."

The fifth instruction is: "The court instructs the jury that if you believe from the evidence in this case that fire was discovered about the plaintiff's premises on the 16th of February, 1915, and that the locomotive of the defendant had passed over the defendant's tracks, which were adjacent to the plaintiff's premises, a short time before, that of itself creates no presumption that the locomotive so passing threw out any sparks or communicated any fire to the plaintiff's premises."

The seventh instruction is as follows: "The court instructs the jury that although you may believe from the evidence that a certain locomotive under the management or control of the defendant on February 16, 1915, did throw out from the smokestack of such locomotive cinders or embers, which were warm, this alone does not entitle the plaintiff to recover damages

against the defendant in this case. The plaintiff must go further and prove that fire was communicated to the plaintiff's premises by a locomotive belonging to or under the control of the defendant; and unless the jury believe from a preponderance of the evidence that fire was so communicated, you should by your verdict find the defendant not guilty.''

It is contended by counsel for appellant that by each of these instructions a particular fact was singled out and the jury advised that even if such fact did exist that the jury would not be warranted in finding the defendant guilty. It is true that each of these instructions do advise the jury that although the particular fact referred to therein does exist, this would not warrant the jury in finding the defendant guilty. It appears from the undisputed facts in this case that the day on which the fire occurred was clear and bright. That there was no fire about the building or lumber-yard, except in the office, which was an independent building and not destroyed; that the fire was discovered about fifteen or twenty minutes after the appellee's train passed by. It also appears from the testimony of appellant's witnesses that as the engine passed by the premises in question it emitted smoke, sparks and cinders and that they were blown to a considerable distance, towards and on the appellee's premises. It seems to us that this evidence should have been submitted to the jury without the limitations imposed by these instructions. It is said by the Supreme Court of this State that where the weather was dry and the wind blowing from a favorable direction and the engine discharged sparks and burning cinders, which were blown towards the destroyed building, and the fire was first seen on the side of the building next to the railroad, that such evidence fairly tended to prove that fire was communicated to the building from the engine, and was sufficient to make out a prima facie case. *Illinois Cent. R. Co. v. Bailey*, 222 Ill. 484; *Chi-*

*cago & A. R. Co. v. Glenny,* 175 Ill. 238. And again, where it appeared that there was- no fire in the orchard when the owner left it about noon to go to his dinner and returning in less than one hour afterwards saw it burning, three trains had passed in the meantime and the court under such circumstances says: "A prima facie case of negligence, therefore, was made out by appellee, and the court properly refused, at the conclusion of the testimony for him, to instruct the jury to return a verdict of not guilty." *Toledo, St. L. & W. R. Co. v. Needham,* 105 Ill. App. 25. Where it appeared that there was no fire in the dwelling house of the owner and that a freight train with engine and twenty-five to forty cars passed by the owner's premises, and that they heard a heavy exhaust and saw smoke coming from the stack, and that other witnesses about the same time saw the train, that was not running very fast, pass by and shortly thereafter saw plaintiff's building on fire, it was held that these facts were sufficient for the jury to find that the building was destroyed by fire from the engine. *Boehning v. Elgin, J. & E. Ry. Co.,* 193 Ill. App. 146.

The first instruction complained of singles out the fact that if the defendant's locomotive was operated on defendant's track, which was close to plaintiff's premises, and that a short time thereafter a certain building was discovered to be on fire; and the fifth instruction singles out the fact that even if a fire was discovered about the plaintiff's premises on the 16th of February, 1915, and that the locomotive of the defendant had passed over defendant's tracks, which were adjacent to plaintiff's premises, a short time before; and the seventh instruction states the fact that although the jury may believe that a certain locomotive under the management or control of the defendant on February 16, 1915, did throw out from the

smokestack of such locomotive cinders or embers which were warm, this alone does not entitle plaintiff to recover. These instructions were, in our opinion, very misleading. When considered under the conditions that existed here, of the day being bright, the wind favorable for carrying the sparks from the engine to the premises of appellee, the building having been destroyed shortly after the train passed, and no fire on the premises except in the office, which was not burned, and no other persons than those above mentioned being on the premises, then for the court to advise the jury that the different facts as above set forth would not warrant the jury in finding the defendant guilty are certainly misleading and erroneous. Such instructions have been repeatedly condemned by our Supreme Court. "Where an instruction selects one item of evidence, or one fact disclosed by the evidence, and states that a certain conclusion does not follow as a matter of law from that fact, it is calculated to mislead and confuse the jury. The ordinary juror is not able to distinguish between conclusions which follow as matter of law and conclusions which follow as matter of fact." *Drainage Com'rs of Dist. 3 v. Illinois Cent. R. Co.,* 158 Ill. 358. The judgment of the court was reversed in this case on account of giving such erroneous instructions. The court again, in commenting upon this class of instructions, says: "This class of instructions, which selects one item of evidence or one fact disclosed by the evidence and states that a certain conclusion does not follow, as a matter of law, from that fact, is calculated to mislead and confuse a jury." *West Chicago St. R. Co. v. Petters,* 196 Ill. 300. In a later opinion, the Supreme Court says, in commenting upon instructions of this character: "The objection is that each isolates a fact and tells the jury that such fact is not sufficient to overthrow the will. If this course was pursued with

reference to each fact which contestants established, the proponents could have the jury instructed, by a separate instruction, that each one of many circumstances relied upon by contestants was not sufficient to warrant the jury in returning a verdict finding that the paper offered was not the will of the testatrix. This course would probably induce the jury to find for the proponents, when a consideration of all the circumstances together free from the influence of such instructions might lead the jury to the conclusion that the evidence preponderated in favor of the contestants." *Weston v. Teufel,* 213 Ill. 301.

While it may be true that each of the facts selected and stated by appellee in its instructions might not warrant a recovery, yet, when they are all considered together under the conditions that existed, we certainly think that they should not one by one have been taken from the consideration of the jury but it should have been allowed to consider them all together and then determine from all the facts including these the cause of the fire.

Other objections have been urged but we do not deem it necessary to give them a critical examination but deem it sufficient to say that under the repeated decisions of our Supreme Court it was not proper for counsel for appellant to inquire if this suit was not carried on by an insurance company as that was not material. The objection to this question, however, was sustained but such questions and insinuations are calculated to prejudice the jury.

The question as to the copy of the list of property destroyed which appellant inquired about was certainly proper as it had a right to know who made that copy, and it developed later on in the examination of the witness that the firm that made the copy had been employed by the appellant to adjust its loss and that the firm was engaged at work for it.

For the reasons above given we are of the opinion

that the court erred in giving the instructions heretofore referred to for the appellee, and for that reason the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*

MR. JUSTICE BOGGS, dissenting.